Our final case of the day is United States v. Sargent. Mr. Getter Good morning, may it please the court, Matthew of America, there was more than sufficient evidence for a rational jury to have concluded that Christopher Clont gave inside information to David Sargent on May 1st, 2020, for the purpose of Sargent trading on the evidence that the jury had before it to make that rational conclusion included the following on April 21st, Mr. Clont texted Mr Sargent to ensure that Mr. Sargent knew the correct date of the upcoming Chegg's earning call because Mr. Clont had misspoken in a previous conversation. On May 1st, it's undisputed that Mr. Clont learned inside information about Chegg's blockbuster earnings that were going to be reported the next business day. Eleven minutes after that internal Chegg call ended, Clont and Sargent a telephone conversation. That is undisputed as well. About 30 minutes after that conversation ended, Mr. Sargent emptied his Roth IRA account to buy Chegg stock through a market order at a price that was about 20% higher than what he was willing to pay for Chegg stock on April 21st, only 10 days prior. Within the next approximately one hour, Mr. Sargent emptied his trading account to buy out-of-the-money options expiring in two weeks, and he paid for some of it on margin. During the May 4th earnings call, Mr. Sargent was clearly expecting to hear mention of a certain metric relating to subscriber growth. Then after the May 4th earnings call, Mr. Clont sent a money-faced emoji with no explanation, and Mr. Sargent texted back about the earnings call, signifying that they were on the same page as to what the emoji with no text explanation meant. May I stop you because we've really read all of this. Does a benefit have to be a financial benefit? Could it be a benefit such as keeping a friendship strong or repaying someone for prior hard work or investing in a potential future financial relationship? Absolutely, Your Honor. The case law is clear that the benefit that the tipper can receive can be non-pecuniary. It does not have to be financial. It can be in the form of a gift. If you want to gift information to a friend or a colleague, it has the financial equivalence of selling the stock yourself and giving them money. In this case, the relationship between Mr. Clont and Mr. Sargent was well established by the testimony that they were close friends since college, which I'm approximating about 15 or so years earlier, that they had founded a company together, that their families remained close, and that Mr. Clont was aware of the study blue. A number of years earlier had missed out on the financial windfall that Mr. Clont gained by virtue of staying with study blue. So yes or no? Yes. I've been wondering, the jury wasn't given an instruction that explained the word benefit, right? Your Honor, I could be wrong, but I do believe there was within the instructions, I could be mistaken, but I believe the jury was instructed that the financial, I'm sorry, that the benefit could be non-pecuniary. I apologize if I'm wrong, but I thought there was such an instruction. If so, I'm confused because, well, we'll know soon enough. Okay. Thank you. Again, if I'm wrong, I apologize. I thought it was in there. And it is the law. You're probably right. I've been wrong before. Me too. A few months later, after these purchases were made, Mr. Clont lied to the Financial Industry Regulatory Authority, or FINRA, about not knowing Mr. Sargent. In light of this evidence, it was not irrational for this jury, or any rational jury for that matter, to have deferred that Sargent acted in his purchases based on inside information that Mr. Clont had given him on May 1st. As far as the rationality as to why the jury could have drawn this verdict in more detail, again, the close relationship between Clont and Sargent provides a motive. While the District Court mentioned in its oral ruling in December that the two persons had a friendly relationship, it was more than that, and the jury was well aware of the extent of their relationship. The April 21st text between Mr. Clont and Mr. Sargent shows that while the District Court mentioned that text, there was more detail the District Court did not mention in its ruling, namely that they had spoken by video the previous day, and that they must have discussed Chegg's, and Chegg's earning call, because Clont felt the need to correct the information he had provided Sargent the previous day. As a result, the jury was fair in inferring from that that Clont knew that the Chegg earnings call was important enough to Sargent that he felt the need to correct it. Mr. Ketterer, you don't have to answer this if you don't want to, and I'll definitely understand, but what's your best guess as to why Clont was acquitted and Sargent was not? It's an interesting question, Your Honor. I mean, this goes to why we try not to get behind the jury's verdict. If I have two answers for Your Honor, they would be speculative, but I'll try. Number one, one of the elements of the Securities, of the insider trading statute, 78JB, is that the defendant had to have a mens rea of willfulness, which means as the District Court instructed the jury, that the defendant had to have known or appreciated the unlawfulness of his conduct, as opposed to just the wrongfulness of his conduct. The jury was aware of the fact from the evidence presented that Mr. Sargent was an attorney and Mr. Clont was not. As a result, the jury was well within its rights to infer that Mr. Sargent appreciated that, excuse me, that Mr. Sargent appreciated the unlawfulness of the conduct, while Mr. Clont may not have. He may have appreciated that it was wrong for him to do that by virtue of the fact that he was told by Chegg not to, but he might not have known the unlawfulness. The second thing I would say, Your Honor, is that it may simply have been a question of jury nullification. Mr. Clont testified, and the jury may have decided, number one, that they liked him, and number two, they may have asked the same sort of question that Your Honor just posed, which is, why didn't Clont get any money, and have decided, and decided that because Clont didn't get any money, they did not want to find him guilty. Again, I don't know, but those are my best inferences, if you will. Now, let me turn your attention to the second issue in this case, which is the alternative grant of a new trial. Our review is supposed to be deferential. What's wrong with a grant of a new trial? Your Honor, the problem with granting a new trial in this instance is that the district court made it clear that its granting of a Rule 33 motion for a new trial was derivative, entirely derivative, of its ruling on the Rule 29 motion. I understand that. That's what it seems. But in granting a new trial, the district judge gets to play the 13th juror in a way that a Rule 29 motion doesn't allow him to do. That's correct, Your Honor. However, while the standard is deferential to the district court in its abuse of discretion, there still has to be a baseline for what the judge had before him, and what the basis for the judge's decision was. Here, the district court gave no explanation for why granting a new trial was appropriate, other than the fact that he concluded that the jury gave an irreproachable decision. I'm interested in what the judge said in addition. Judge Shah said, I actually think that Sargent is guilty, though I don't think it was proved beyond a reasonable doubt. Did you find any examples of a new trial being granted when the judge says he actually thinks the defendant is guilty? No, I did not. I looked a bit. It didn't turn up, but maybe there are some out there. I'm not aware. It's a very unusual posture, it seems to me. I don't, to follow Your Honor's earlier admonition to previous litigants, I don't know what the district court was thinking. No, I'm not asking you what the judge was thinking. We know what he said. Correct. My position, Your Honor, is that the record is devoid of any evidence of a manifest miscarriage of justice that would justify the district court granting it. Right. We know he wasn't relying on trial errors. He wasn't saying, oh, and there was also an evidence problem, or there was a dodgy instruction, nothing of that sort. Correct, Judge. But, and I see I'm out of time. I'm sorry. As long as we're asking questions, you can keep giving answers. Okay. I think, Your Honor, that while Rule 33 gives the district court the ability to grant a new trial, there still has to be, there are still limits to what the district court can, why the district court can grant a new trial. The district court shouldn't be able to substitute itself for the jury in making a decision about the defendant's guilt. In this case, there was nothing set out in the record that justified the district court's decision. Okay. I think we have your position. Thank you, counsel. Thank you very much for your time, Your Honor. Mr. Grohman. Good almost afternoon, Your Honors. My name is Christopher Grohman, and I appear on behalf of the appellee, David Sargent. I'd like to start by saying it's a pleasure to once again be over at this side of the got this completely correct in all respects, and that this is the rare case where the quantum of evidence fell below what is needed for a rational jury to find a defendant guilty beyond a reasonable doubt. However, given that Judge Easterbrook... Let me tell you what my problem with that is, and my whole problem with the district court's opinion. He seems to be saying that in a tipping case, unless the tip is either in writing or recorded, there cannot be a guilty verdict. And that seems awfully hard to defend. That's... I don't necessarily think that's my reading of what the district court is saying. What was missing other than the tip being in writing or recorded? Everything else seems to suggest that there was a tip. What is the... There's a paucity of evidence that Mr. Clunt knew that Mr. Sargent was going to trade on this information. If the government was allowed to proceed under the traditional 18 U.S.C. 1948, they could have convicted Mr. Sargent in essentially tricking Mr. Clunt into providing this information. But that was not how it played out at trial because of what the court found was a due process information. So there was a paucity of evidence that Mr. Clunt knew that Mr. Sargent was going to execute trades on this information. And that's what the district court hung its hat on in this case. And I think that is completely correct. There is also, I think, a paucity of evidence on other elements. So what was the tip? There's this talk about subscriber information. There's talk about these revenue numbers. And the government relies heavily on a couple of things. One is the suspicious timeline. And two is the riskiness of these trades. But if you look at the direct evidence in this case, which comes from the testimony of David Clunt, none of that, either the timeline or the selection of the trades, is ascribable to Mr. Sargent. Mr. Sargent is a novice trader at best. Mr. Clunt... You don't expect novice traders to essentially mortgage their entire future to suddenly make a trade on a company they have never owned stock in before moments after receiving a phone call from an insider. He didn't, though. He was gambling with found money. He and Primer had started this trading thing on the volatility index. And they had just won, because it's a gambling index more than anything else, $28,500 in the VIX, plus an additional $8,000 on essentially shorting airline stocks at the beginning of the pandemic. So that's, by my math, which is not great, $36,500, right? And at virtually the same time, he's making these trades in Chegg. He is making trades in other COVID positive stocks, health care stocks, another educational stock. And shortly after he executed this trade, he bought additional risky puts in Chegg, and he lost it. He was gambling with found money. You know, turning to... You know, much of your argument is, of course, based on the fact that Primer and not Sargent was driving the bus on the Chegg investment, and that Primer's decisions weren't based on inside information. But how do we know that Sargent was not passing the inside information from Klunt to Primer? Because that's what the trial testimony was, Your Honor. There was no argument that that was the case. Mr. Primer testified that that was not the case. Mr. Primer testified that it was his decision on what the mix of stocks was. It was his decision on what day was going to be traded, right? And that bears out in the timeline of events. So the government alleges that the tip occurred on May 1st after this earnings, pre-earnings release. But it's not Mr. Sargent who calls Mr. Primer and says, okay, it's time to trade. It's the other way around. It's Primer who calls Sargent and says, hey, do you still want to do this today? So, you know, all of the suspicious timing and the suspicious mix of out-of-the-money calls, and not all of the options were out of the money, I think, about three quarters of them were in the money, actually. I don't know the exact number, but the strike prices were $40 and $50, and the stock was trading at $42. So some of them were in the money. It was Primer who picked the mix of stocks. And it was Primer who testified, we decided to do a $50,000 total because that was close to what we had just made trading other stocks. He's not mortgaging his whole future. He's using money he just made. I don't think economists would view this as a very good argument. It sounds like if you find $50,000 on the street, it's perfectly logical for you to throw it in a lake. No, the fact that money may be new doesn't mean that it's not valuable just like other money. I'll fall back on my own economics degree from Wharton, so I'll agree with you, but you have to think about who the person is, right? And David Sargent is a novice trader. During the pandemic, my best friend and I took cocktail-making classes and Spanish lessons. He decided to trade in the stock market, not just in this stock but in others. But I think I will move on to some of Judge Easterbrook's questions on the Rule 33. You know, my reading of the district court's comment that he probably did it was more of a comment on the quantum of evidence. Like, I think he did it, right? I think by 51% of the evidence here, you're more likely than not that this was insider trading. But that's not what the standard is. Well, that's the Rule 29 standard. He says it's not beyond a reasonable doubt, so I'm granting the motion for acquittal. But have you found any other case where the judge said, I think he's guilty, but I'm granting a new trial? I have not, and I did look, Your Honor. There may be some out there, but they're very hard to find, if they are. Yes, you know, a couple of things on that. I want to make two points on that. One is, I would, obviously, I wish there was a more robust ruling on the Rule 33. But this is a judge who took it under, Rule 29, under advisement, then held a separate status hearing where he asked questions of the parties about how he was the testimony and asked whether or not he was allowed to weigh the testimony of Defendant Clunt along with everybody else, and then issued a ruling. So I think reading the record as a whole, he weighed the testimony. Also, if the struggle here is with how fulsome the explanation was for the Rule 23 motion, or ruling, and I think the remedy before you would reverse it would be to remand it for a fuller ruling and not wholesale deny a defendant a new trial, especially in a case where a very learned district judge... It's a little weird, though, because a new trial doesn't fit, really, here. Because new trial, you usually get where, you know, there's some problem with discovery or some problem with prosecutorial misconduct where the judge says, look, there's enough evidence to convict, but something went wrong along the way, so the defendant doesn't get a new trial. Here, it seems like the judge just threw that in at the end as an alternative. If the Court of Appeals disagrees with me on the weight of the evidence, then we should give the defendant a new trial. But I don't see that anywhere as a grounds for a new trial. Well, the Rule 33 standard is against the manifest weight of the evidence. So he thought it was, and he said this in the ruling, he said, I view the evidence as the 13th juror and I found it to be against the manifest weight of the evidence. But that weighs in favor of us just affirming the district judge on the acquittal. That's a different legal standard, right? The substituting yourself as the 13th juror and evaluating the manifest weight of the evidence is entirely different than evaluating whether a rational jury could find guilt beyond a reasonable doubt. It's just, it's apples and oranges to me. And with that, I would ask you to affirm the district court. Thank you. Thank you very much. The case is taken under advisement and the court will be in recess.